IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL WISNEFSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 23-cv-04984 |
| | ) | |
| MICKEY GROUP INC. and | ) | |
| ALEX RABENS, | ) | JURY TRIAL DEMANDED |
| | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

NOW COMES Plaintiff, MICHAEL WISNEFSKI ("Michael"), by and through his attorneys, GALARNYK & ASSOCIATES, LTD., and complains against Defendants, MICKEY GROUP INC., a New York Corporation ("Mickey Group" or the "Company") and ALEX RABENS ("Alex") as follows:

## NATURE OF THE CASE

This is an action for unpaid compensation. Michael was employed as President of Mickey Group, a commoditech platform. In early 2023, Michael was fired without explanation via text message. Following his termination, Mickey Group cut off all communications with Michael and failed to issue his final compensation. In addition to withholding his earned compensation, Mickey Group failed to make a severance payment that the parties expressly agreed to in Michael's written offer letter. This action follows.

## PARTIES

1. Plaintiff Michael Wisnefski was formerly employed by Mickey Group as President. Michael resides and was employed by Mickey Group in Chicago, Illinois.

2. Defendant Mickey Group is a New York corporation with its principal place of business located in New York, New York.

3. Defendant Alex Rabens is Mickey Group's CEO. Michael reported directly to Alex. Upon information and belief, Alex resides in New York, New York.

## STATEMENT OF FACTS

*i. Background*

4. Michael is a financial professional with substantial experience in the field of commodity markets and trading.

5. On or about August 1, 2022, Mickey Group merged with Michael's former company, Materials Xchange, LLC, a digital marketplace for buying and selling raw materials.

6. On or about August 16, 2022, Michael signed a written employment offer letter setting forth the terms of his employment and compensation (the "Agreement"), a true and correct copy which is attached hereto, incorporated herein and marked as Exhibit "A."

7. Under the terms of his employment, Michael performed his employment duties remotely, in Chicago, or in Mickey Group's presumed Chicago office. *Ex. A*.

8. The Defendants knowingly employed Michael to act as Mickey Group's President out of Illinois.

9. The Defendants actively managed Michael's employment in Illinois.

10. The Defendants regularly communicated and interacted with Michael in Illinois, regularly sent and received correspondence to and from Illinois for the purpose of conducting

Mickey Group's business, and, until recently, regularly paid Michael in Illinois to conduct Mickey Group's business.

11. Michael's compensation package included an annual salary, annual bonus, severance, and retirement benefits, among other things.

12. Specifically, the Parties agreed that if Michael was terminated without cause, as determined by Illinois law, then he would be entitled to a severance payment, payable semi-monthly, equal to three-months of his most-recent salary. *Ex. A*.

13. Michael served as Mickey Group's President for approximately seven months until March 31, 2023, when he was fired by Mickey Group's CEO, Alex, via text message.

14. No cause or explanation was ever provided for Michael's termination.

15. Thereafter, Mickey Group cut off all communications with Michael.

*ii. Michael's Unpaid Compensation*

16. Prior to his termination, Michael received his wage payments from Mickey Group by direct deposit.

17. After his termination, Mickey Group failed and refused to pay Michael any first quarter commissions for 2023, although he was employed to the end of the quarter.

18. Additionally, because he was terminated without cause under the terms of the Agreement, Michael is owed a severance payment equal to three-months of his regular salary. *Ex. A*.

19. Following his termination, Michael repeatedly contacted Mickey Group to request his final compensation due under the Agreement, but Mickey Group failed and refused to communicate with him or pay him the amounts he is due.

## COUNT I – VIOLATION OF THE ILLINOIS
## WAGE PAYMENT & COLLECTION ACT

### Against Defendant Mickey Group

20. Michael adopts and incorporates each numbered paragraph above as though fully restated herein.

21. At all times relevant hereto, there existed a statute, 820 ILCS 115/1 *et seq.*, known as the Illinois Wage Payment and Collection Act (the "Wage Payment Act").

22. At all times relevant hereto, Mickey Group was Michael's employer as defined by the Wage Payment Act and Illinois law.

23. The Wage Payment Act Provides, in Section 5:

> Every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee. Where such employee requests in writing that his final compensation be paid by check and mailed to him, the employer shall comply with this request.
>
> Unless otherwise provided in a collective bargaining agreement, whenever a contract of employment or employment policy provides for paid vacations, and an employee resigns or is terminated without having taken all vacation time earned in accordance with such contract of employment or employment policy, the monetary equivalent of all earned vacation shall be paid to him or her as part of his or her final compensation at his or her final rate of pay and no employment contract or employment policy shall provide for forfeiture of earned vacation time upon separation.

24. The Wage Payment Act defines "final compensation" as:

> Wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties.

25. Michael had an agreement with Mickey Group wherein he would receive an annual salary, annual bonus, quarterly commissions, benefits, and an agreed severance payment in the event he was terminated without cause.

4

26. Michael was terminated without cause.

27. Under the terms the Employment Agreement, Michael is owed final compensation equal to:

    a. Contractual severance equal to three-months of his base salary;

    b. Quarterly Bonus Payment for the first quarter of 2023; and,

    c. Other benefits and earned compensation to be proven at trial.

28. Mickey Group failed and refused to pay Michael's final compensation.

29. As a direct and proximate result, Michael has been damaged in an amount equal to his agreed, unpaid compensation, benefits, salary, and other damages to be proven at trial.

WHEREFORE, Plaintiff, MICHAEL WISNEFSKI, respectfully requests that this honorable Court:

    A. Enter judgment in his favor and against Defendant Mickey Group in an amount to be proven at trial;

    B. Award Michael's reasonable attorneys' fees and costs incurred to recover his unpaid compensation pursuant to Section 14 of the Wage Payment Act;

    C. Award additional, statutory damages of "5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid" as provided in Section 14 of the Wage Payment Act; and

    D. Grant any and all other relief deemed appropriate under the circumstances.

## COUNT II – VIOLATION OF THE ILLINOIS WAGE PAYMENT & COLLECTION ACT

### Against Defendant Alex Rabens, individually

30. Michael adopts and incorporates each numbered paragraph above as though fully restated herein.

31. The Wage Payment Act Provides, in Section 13:

> In addition to an individual who is deemed to be an employer pursuant to Section 2 of this Act, any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation.

32. Alex is the CEO of Mickey Group, and he has held that position at all times relevant hereto.

33. Pursuant to the Agreement, Michael was to report directly to Alex.

34. Alex is one of the primary decision makers responsible for Mickey Group's employment decisions and operations.

35. Alex is an officer and agent of Mickey Group.

36. Michael tried communicating with Alex multiple times via email and text message regarding his employment status and unpaid compensation.

37. Alex knowingly permitted Mickey Group to violate the Wage and Payment Act in one or more of the following ways:

   A. By ignoring Michael's communications regarding his employment;

   B. By failing and refusing to pay Michael the compensation he was due;

   C. By failing and refusing to take action within his power to ensure that Michael received the compensation he was due; and,

   D. In other ways to be proven at trial.

38. As a result, Alex, individually, is deemed to be an "employer" under the Wage Payment Act.

39. As Michael's employer, Alex violated the Wage Payment Act in one or more of the ways identified in the Statement of Facts and Counts I and II above.

40. As a direct and proximate result, Michael has been damaged in an amount equal to his agreed, unpaid compensation, benefits, salary, and other damages to be proven at trial.

WHEREFORE, Plaintiff, MICHAEL WISNEFSKI, respectfully requests that this honorable Court:

A. Enter judgment in his favor and against Defendant Alex Rabens in an amount to be proven at trial;

B. Award Michael's reasonable attorneys' fees and costs incurred to recover his unpaid compensation pursuant to Section 14 of the Wage Payment Act;

C. Award additional, statutory damages of "5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid" as provided in Section 14 of the Wage Payment Act; and

D. Grant any and all other relief deemed appropriate under the circumstances.

## COUNT III – BREACH OF CONTRACT
### Against Defendant Mickey Group

41. Michael adopts and incorporates each numbered paragraph above as though fully restated herein.

42. Michael and Mickey Group entered into the Agreement, which is a valid and binding contract. *Ex. A.*

7

43. Michael performed all of his obligations under the Agreement.

44. Mickey Group breached the terms of the Agreement in one or more of the following ways:

    a. By failing and refusing to pay Michael's Quarterly Bonus Payment for the first quarter of 2021;

    b. By failing and refusing to pay Michael's severance after terminating him without cause; and

    c. In other ways to be proven at trial.

45. As a direct and proximate result of Mickey Group's breach, Michael has been damaged in an amount in an amount equal to his agreed, unpaid compensation, severance, benefits, and other damages to be proven at trial.

WHEREFORE, Plaintiff, MICHAEL WISNEFSKI, respectfully requests that this honorable Court enter judgment in his favor and against Defendant, MICKEY GROUP INC., in an amount to be proven at trial, and grant such other relief as may be just and appropriate under the circumstances.

## **JURY DEMAND**

Plaintiff demands trial by a twelve-person jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,
Plaintiff, MICHAEL WISNEFSKI

By: /s/ Andrew J. Cunniff, Esq.
    One of his Attorneys

Attorney Code: 27751
John D. Galarnyk, Esq.
Andrew J. Cunniff, Esq.
John A. Romanucci, Esq.
GALARNYK & ASSOCIATES, LTD.
55 West Monroe Street, Ste. 3600
Chicago, Illinois 60603
john@galarnykltd.com
andrew@galarnykltd.com
johnr@galarnykltd.com



MICKEY GROUP INC. | New York NY USA | www.mickeytrading.com

**CONFIDENTIAL**

August 16, 2022

**Re: Offer Letter**

Dear Mike,

We are thrilled to extend you the offer to join Mickey Group Inc. (the "Company") as President, a full-time exempt position.

This offer is subject to and contingent upon satisfactory completion of the acquisition of MaterialsXchange, LLC by the Company as well as of reference and background checks. The principal terms of our offer are as follows:

- **Proposed start date and responsibility**: You will start working for the Company on August 22nd. The Company is offering you the position of "President" and your duties on behalf of the Company will be commensurate with such position. You will report to the Chief Executive Officer of the Company and perform such duties as may be assigned to you by the Chief Technology Officer, and Controller of the Company from time to time.

- **Principal place of employment**: Subject to reasonable business travel, you will perform your duties on behalf of the Company at the Company remotely or in the presumed Chicago office.

- **Compensation**: You will receive a Salary of $200,000 per year, payable on a semi-monthly basis, less applicable deductions under federal and state law paid in accordance with the Company's payroll practices in effect from time to time. Currently, paychecks are issued on the fifteenth of the month and the last day of the month.

- **Severance**: Should your employment be terminated Without Cause (as defined by State of Illinois) you are entitled to Severance Pay of Three-months of Base Salary paid on regular payroll schedule following your departure from Company. Your right to receive Severance Pay is conditioned on the execution and delivery of a binding general release.

- **Raise**: Upon close and collection of "Series A" Financing Round (Defined as an Equity Financing with Total Proceeds to the Company of not less than $5,000,000), Salary to increase to $300,000 per year. Upon close and collection of "Series B" Financing Round (Defined as a Subsequent Financing with Total Proceeds to the Company of not less than $25,000,000), Salary to increase to $400,000 per year. Notwithstanding the foregoing, you must be employed with the Company in order to earn such Raise, and you may not earn Raise after your employment with the Company has terminated.

- **Bonus:** Upon close and collection of "Series A" Financing Round (Defined as an Equity Financing with Total Proceeds to the Company of not less than $5,000,000), you will be eligible to receive a $50,000 one-time bonus payment. Notwithstanding the foregoing, you must be employed with the Company in order to earn such Bonus, and you may not earn Bonus after your employment with the Company has terminated.

- **Commission**: In addition, you are eligible to participate in a Quarterly Bonus Payment equal to 15% of the (x) total Gross Profits attributable to Exchange Transactions (aka orders originated via the MaterialsXchange marketplace). This commission will be split among the group(s) of person(s) who performed work relating to those sales. Notwithstanding the foregoing, you must be employed with the Company in order to earn a commission, and you may not earn commissions after your employment with the Company has terminated. Notwithstanding anything to the contrary herein, any and all determinations relating to commission payments will be made by the Company in good faith. Commission to be distributed Quarterly and total shall reflect only such transactions that are fully realized, collected, and delivered.

- **Proposed Option Grant**: As soon as practicable following your start date, you shall be granted, subject to approval by our Board of Directors and the execution of a binding stock option award agreement, an option to purchase 555,000 of the Company's common stock. The option shall be subject to vesting as follows: 25% of the total number of shares shall vest and become exercisable on the first anniversary of your start date and the remaining portion shall vest over the next 36 months in equal monthly installments, in each case, subject to your continuing service through the applicable vesting dates and the other terms and conditions of the Mickey Group Inc. 2020 Stock Option and Grant Plan. Stock Option Strike Value subject to 409A Valuation of Company at time of Stock Grant.

As part of the Mickey Group team, you are also eligible for the following benefits beginning on your actual start date:

- 401k Program currently managed by Betterment

Your employment with the Company is also contingent upon your acknowledgement and acceptance of all Company policies and employee guidelines, which you will receive during onboarding, including the Company's standard Non-Disclosure and Invention Assignment Agreement, a copy of which is enclosed with this letter.

On your first day of employment, you will be provided with additional information about the objectives and policies, benefit programs, and general employment conditions. To fulfill federal identification requirements, you should bring documentation to support your identity and eligibility to work in the United States.

By signing this offer letter, you confirm to the Company that you have no contractual commitments or other legal obligations that would prohibit you from performing your duties for the Company.

This offer letter and the policies and agreements referenced above represents the entire agreement between you and the Company with respect to the terms of your employment. This agreement supersedes any prior arrangement, representations, or promises of any kind, whether oral, written, express, or implied between you and the Company.

Please note that your employment with the Company is for no specified period and constitutes "at will" employment. As a result, you are free to resign at any time, for any reason or for no reason. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice. We request that, in the event of resignation, you give the Company at least two weeks' notice.

Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures, may change from time to time, the "at will" nature of your employment may only be changed in an express written agreement signed by you and by the Chief Executive Officer of the Company.

All forms of compensation referred to in this offer letter are subject to reduction to reflect applicable withholding and payroll taxes and other deductions required by law. You are encouraged to obtain your own tax advice regarding your compensation from the Company. By signing this offer letter, you agree that the Company does not have a duty to design its compensation policies in a manner that minimizes your tax liabilities, and you will not make any claim against the Company or its Board related to tax liabilities arising from your compensation.

If the terms and conditions of this offer letter are acceptable to you, please sign below. This offer will expire at 5:00pm on August 17, 2022.

We are excited to have you join the company to help us build the future. You will be a great addition to the team and we look forward to your arrival!

If you have any questions, please contact me directly.

*[Signature Page Follows]*

116462810

Sincerely,

**MICKEY GROUP INC.**

By: _____
Name: Alex Rabens
Title: Chief Executive Officer

Agreed and accepted by **Mike Wisnefski**:

_____
Signature

Dated: 8/16/2022

*[Signature Page to Offer Letter]*

116462810