UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL WISNEFSKI,<br><br>        Plaintiff,<br><br>v.<br><br>MICKEY GROUP INC. and ALEX RABENS,<br><br>        Defendants. | Case No. 1:23-cv-04984<br><br>District Judge Ellis<br><br>Magistrate Judge Kim |

**JOINT MOTION TO RESOLVE DISCOVERY DISPUTES**

The Parties, by and through their respective undersigned counsel, jointly move for an order resolving discovery disputes pursuant to Fed. R. Civ. P. 26, 33, 34, and 37, Local Rule 37.2, and the Court's standing order on discovery motions and e-discovery. Specifically, Defendants seek to compel the production of the following, limited to calendar years 2022 and 2023 (or, depending on the request, further limited to Plaintiff's actual dates of employment): (1) information concerning all sources of Plaintiff's income, (2) information concerning Plaintiff's accounts, devices, and platforms used to trade securities, (3) information concerning Plaintiff's transactions involving trading securities, (4) documents relating to all income earned by Plaintiff, including tax returns, (5) documents relating to Plaintiff's efforts to secure employment, and (6) communications containing one or more of 12 search terms listed by Defendants related to this case.

I.   Factual background

   A.   Defendants' position

Defendant Mickey Group Inc. is a tech startup company focused on commodities and providing a digital marketplace for lumber buyers and sellers. Mickey employed a sales team, which included Plaintiff in the position of President, as part of the platform to connect buyers and sellers. Plaintiff asserts a breach of contract claim against Mickey and claims under the Illinois Wage Payment and Collection Act against Mickey and its CEO, Defendant Alex Rabens. (Am. Compl., D.E. 10.) These claims are all based on Plaintiff's allegations that Defendants terminated his employment in March 2023 and failed to pay him contractual severance, earned commissions, and other unspecified benefits and earned compensation.

Defendants assert that Plaintiff is not entitled to severance because any termination was "for cause" pursuant to the contract at issue, (*see id.* at 10–13), due to Plaintiff's engagement in personal matters on company time (and possibly competing against Mickey in the marketplace in doing so), insubordinate behavior toward his superiors, repeated refusal to perform his job duties, and repeated violations of Mickey's company policies. Defendants also assert that Plaintiff is not owed any commissions or other compensation or benefits not already paid to him.

   B.   Plaintiff's position

Michael Wisnefski ("Mike") worked for Defendant Mickey Group, Inc. for approximately six months before he was let go without explanation in 2023, via text message. When Mike requested the severance pay that was due under his written employment agreement, the Company's CEO, Alex Rabens, refused to respond and cut off all communications, again without explanation. After Mike filed a wage claim in the Circuit Court of Cook County, the Defendants removed the

2

action to this Court and asserted that Mike was fired "for cause." Whether Mike was fired "for cause" is the only significant issue in dispute.

This is not a documents case. Mike only worked for the Company for a short time before he was let go (less than 7 months), and the Defendants apparently have no internal documentation explaining or discussing the reasons for his layoff, based on their production. Mike has produced every document related to his termination and severance in response to the Defendants' three separate sets of requests to produce.

## II. History of discovery dispute and compliance with Local Rule 37.2

Defendants issued their first set of discovery requests to Plaintiff on November 15, 2023. (**Ex. 1**.) Plaintiff sent responses to the interrogatories on December 22 and responses to the requests for production of documents on January 5, 2024. (**Ex. 2**; **Ex. 3**.) In the months since, the Parties have made good-faith efforts to resolve discovery issues, including discussing disputes and negotiating compromises. (*See, e.g.*, **Ex. 4**.[1]) On March 19, 2024, counsel for the Parties met and conferred pursuant to Local Rule 37.2 via videoconference (Zoom), to work through several issues relating to this case generally and discovery specifically.

On March 13, 2024, and March 20, 2024, Defendants issued their second and third sets of discovery requests, respectively. (**Ex. 5**; **Ex. 6**.) Plaintiff responded to both on April 19, 2024, objecting to every single request. (**Ex. 7**; **Ex. 8**.) Regarding the single document request in Defendants' third set, Plaintiff stated his intention to withhold all responsive documents in his possession except for those that contained one of the 12 requested key words and also the keyword "Mickey,"

---

[1] This exhibit contains a redaction pursuant to Fed. R. Evid. 408.

"Alex," or "Rabens"—three of the 12 search terms listed by Defendants in this request. (Ex. 8 at 2.)

Counsel for both Parties negotiated via email and then met and conferred a second time on April 23, 2024, via telephone. (**Ex. 9**.) However, the Parties have been unable to resolve these disputes. What is left for the Court to resolve are the remaining issues on which the Parties are at an impasse.

### III. Plaintiff's income, job-seeking, and trading activity during his employment with Mickey

#### A. The discovery requests and responses at issue

Defendants' discovery requests concerning these issues, and Plaintiff's responses to each, are as follows:

#### Interrogatory #16

Identify all sources of Your income since January 1, 2022, including income received from unemployment compensation benefits, social security disability benefits, as well as compensation received that was "under the table," and list the gross and net amounts (by week) from each and every source.

**RESPONSE:** Plaintiff objects to this interrogatory as irrelevant to his claims for contractually agreed severance and earned commissions.

(Ex. 1 at 5; Ex. 2 at 10.)

#### Interrogatory #19

Identify all accounts owned or controlled by Plaintiff that Plaintiff accessed or used to buy, sell, or otherwise trade any stock, option, future, commodity, or other security (registered or unregistered) or interest in any security at any time between July 1, 2022, and March 31, 2023, specifying the name of the institution, the type of account (e.g., taxable, IRA, 401(k)), the last four digits of the account number, and the identity of any other persons who owns or controls the account.

**RESPONSE:** Plaintiff objects that the Defendants' interrogatory is irrelevant to the issues in dispute in this action. The only relevant issue in dispute is whether Mickey

4

Group terminated Mr. Wisnefski "for cause" when he was fired by Alex Rabens on March 31, 2023. The Defendants have alleged that Mr. Wisnefski was terminated "for cause" for either (a) taking excessive vacation time in violation of Mickey Group's (unlimited) PTO policy; or (b) for making inappropriate comments to his co-workers. Mr. Wisnefski's securities trading history has no bearing on either the claims or defenses in this action. Additionally, any purported conduct that was not claimed or known to Mickey Group at the time of Mr. Wisnefski's terminated is irrelevant to this action, because it cannot have formed the "cause" for his termination at that time. Plaintiff further objects that this interrogatory is unduly burdensome, overbroad, and disproportionate to the needs of the case based upon the size of this action.

(Ex. 5 at 2; Ex. 7 at 1–2.)

### Interrogatory #20

Identify all devices and platforms – including smartphones, laptop computers, desktop computers, smart tablets, terminals, software systems, computer programs, and smartphone applications (or "apps") – that Plaintiff accessed or used to buy, sell, or otherwise trade any stock, option, future, commodity, or other security (registered or unregistered) or interest in a security at any time between July 1, 2022, and March 31, 2023, including the type of device or program, the name of the device or program, and the current location of all such devices.

**RESPONSE:** See Answer to Interrogatory No. 19 above.

(Ex. 5 at 2; Ex. 7 at 2.)

### Interrogatory #21

Identify all transactions entered into by or on behalf of Plaintiff related to buying, selling, or otherwise trading any stock, option, future, commodity, or other security (registered or unregistered) or interest in a security at any time between July 1, 2022, and March 31, 2023, specifying the date and time that the transaction was entered, the value of the transaction, and the source of the funds used to complete the transactions, including whether the funds used in completing these transactions were owned or controlled by MaterialsXchange and/or Mickey Group, Inc. or any employee or affiliate of either entity.

**RESPONSE:** See Answer to Interrogatory No. 19 above.

(Ex. 5 at 2; Ex. 7 at 3.)

5

**Request for Production #16**

All Documents referring or relating to Your efforts to secure employment on or after January 1, 2022.

**RESPONSE:** Plaintiff objects to this request as irrelevant to his claims for contractually agreed severance and earned commissions.

(Ex. 1 at 8; Ex. 3 at 4.[2])

**Request for Production #17**

All Documents relating to income earned by You since January 1, 2018, including but not limited to Your 2018 through 2022 state and federal tax returns, with all schedules and supporting documents, and all documents concerning employment and pay records, all related tax returns, employer tax forms, employee W-2s, and 1099s for 2018 through 2023.

**RESPONSE**: Plaintiff objects to this request as overbroad, not reasonably limited in time and scope, and irrelevant to his claims for contractually agreed severance and earned commissions.

(Ex. 1 at 8; Ex. 3 at 5.[3])

**Request for Production #19**

All documents and communications reflecting any transaction related to Plaintiff buying, selling, or otherwise trading any stock option, future, commodity, or other security (registered or unregistered) or interest in any security at any time between July 1, 2022, and March 31, 2023 including the times and dates the transactions were made.

**RESPONSE:** Plaintiff objects that the requested documents are irrelevant to the issues in dispute in this action. The only relevant issue in dispute is whether Mickey Group terminated Mr. Wisnefski "for cause" when he was fired by Alex Rabens on March 31, 2023. The Defendants have alleged that Mr. Wisnefski was terminated "for cause" for either (a) taking excessive vacation time in violation of Mickey Group's (unlimited) PTO policy; or (b) for making inappropriate comments to his co-workers. Mr. Wisnefski's securities trading history, if any, has no bearing on either the claims or defenses in this action. Additionally, any purported conduct that was not claimed or known to Mickey Group at the time of Mr. Wisnefski's terminated is irrelevant to this action, because it cannot have formed the "cause" for his

---

[2] This request is misnumbered as Request for Production 17 in Plaintiff's response.
[3] This request is misnumbered as Request for Production 18 in Plaintiff's response.

6

> termination at that time. Plaintiff further objects that this interrogatory is unduly burdensome, overbroad, and disproportionate to the needs of the case based upon the size of this action.

(Ex. 5 at 3; Ex. 7 at 3.)

### Request for Production #20

> All documents and communications generated by any institution, account, or program identified in response to Interrogatories 19 or 20 related to Plaintiff buying, selling, or otherwise trading any stock, option, commodity, or other security (registered or unregistered) or interest in any security at any time between July 1, 2022, and March 31, 2023.
>
> **RESPONSE:** See Response to Request No. 19 above.

(Ex. 5 at 3; Ex. 7 at 3.)

During email negotiations before the first meet and confer, and during the first meet and confer itself, Defendants offered to compromise and narrow the scope of Interrogatory #16 and Requests for Production #16 and #17 to cover only calendar years 2022 and 2023, the years during which Wisnefski was a Mickey employee. (Ex. 4 at 1–2, 6.) Plaintiff stood on his prior objections. (*Id.*) In this motion, Defendants seek to compel production of information and document from only this narrower time frame.

### B. Defendants' position

The relevance standard in discovery is "extremely broad." *Bouto v. Guevara*, No. 19-CV-2441, 2020 WL 4437669, at *2 (N.D. Ill. Aug. 3, 2020). Parties may obtain discovery of nonprivileged matters that are "relevant to any party's claim or defense." *Id.* "[E]vidence is relevant if 'it has any tendency to make a fact more or less probable than it would be without the evidence.'" *Id.* (quoting Fed. R. Evid. 401(a)). The discovery must be proportional to the needs of the case, but does not need to be admissible to be discoverable. Fed. R. Civ. P. 26(b)(1). Relevance is construed

7

broadly and is "not limited to issues raised by the pleadings." *Hoerchler v. Equifax Info. Servs., LLC*, 568 F. Supp. 3d 931, 935 (N.D. Ill. 2021).

Defendants seek information and documents concerning Plaintiff's income, job-seeking, and trading activity during his employment with Mickey because they are relevant to Defendants' argument that Plaintiff was fired for cause and is therefore not entitled to severance pay. Specifically, the information is relevant as to whether Wisnefski was trading commodities personally instead of making these trades on behalf of Mickey, as he was required to do as an agent and fiduciary of Mickey. Proof that Plaintiff was performing outside work when he was supposed to be working for Mickey would support Defendants' position that Plaintiff was not performing his job duties at Mickey and possibly competing against Mickey in the commodities marketplace. The discovery sought therefore goes to the heart of one of Defendants' defenses. Additionally, it could show a violation of Plaintiff's fiduciary duties to Mickey, which would further justify his termination for cause.

Defendants have a good-faith basis to believe that Plaintiff was performing outside work to the detriment of Mickey during his employment. As noted in Defendants' response to Plaintiff's Interrogatory #3, on November 4, 2022, Alex Rabens "learned from Mickey employees in Chicago that Wisnefski was frequently not coming in to the office, and that when he did so, he often worked on personal business—including trading lumber futures and other commodities on his personal accounts—rather than perform his job duties for Mickey." (**Ex. 10** at 10.) Rabens received additional reports in January 2023 that Plaintiff was trading on his personal accounts instead of working for Mickey. *Id.* This information—along with statements showing that Plaintiff took unapproved

8

and excessive vacations and made racist, homophobic, and profanity-laden remarks to his coworkers, including Rabens—has been the basis for Defendants' position that Plaintiff was fired for cause since the beginning. *Id.* at 12. Plaintiff specifically became aware of these details no later than December 20, 2022 when Defendants' responses to Plaintiff's interrogatories were issued.

Defendants have also produced documents that support their position that Plaintiff was not working on behalf of Mickey during his employment. For example, in December 2023, Plaintiff flew to Stockholm and began "talking with" a Swedish company about his non-compete with Mickey." (**Ex. 11** at 7.) Thus, the information and documents sought by the above discovery requests regarding Plaintiff's trading activity, employment-seeking efforts, and income during his time at Mickey are relevant to Defendants' claim that Plaintiff was engaging in personal business at work instead of working on behalf of Mickey. That Defendants have limited these requests to cover the nine months when Plaintiff was employed by Mickey further shows they seek only evidence relevant to this case, and that these requests do not impose an undue or disproportionate burden on Plaintiff.

Courts have compelled the production of income-related information that would show whether the plaintiff was working during relevant time periods. For example, in *Dufour v. Mobile Oil Corp.*, the court affirmed an order compelling production of the plaintiff's bank records to determine whether he was impermissibly working while recovering from an allegedly work-related injury. *Dufour v. Mobile Oil Corp.*, 703 N.E.2d 448, 452 (Ill. App. Ct. 1998); *see also Guimbard v. H. Lee Moffitt Cancer Ctr. & Research Inst., Inc.*, No. 8:12-CV-1670-T-EAJ, 2013 WL 12160968, at *1 (M.D. Fla. May 3, 2013) (compelling production of the plaintiff's pre-termination tax records be-

9

cause they were relevant to whether she "worked for any other entities while working for Defendants"); *Saket v. Am. Airlines, Inc.*, No. 02 C 3453, 2003 WL 685385, at *2 (N.D. Ill. Feb. 28, 2003) (compelling production of information regarding the plaintiff's outside employment). By alleging that he was fired without cause, Plaintiff has placed his own conduct and income during his employment with Mickey at issue. *See Dufour*, 703 N.E.2d at 451. For these reasons, Defendants request that the Court order Plaintiff to produce the requested discovery and award Defendants' reasonable expenses and fees under Fed. R. Civ. P. 37(a)(5)(A).

### C. Plaintiff's position

The requests at issue are either facially irrelevant to the parties' fact dispute or appear to be casting a wide net in search of reasons to justify Mike's layoff *ex post facto*. For example, the Defendants requested Mike's personal tax returns and documentation regarding any sources of income. Mike is not claiming lost income, as in each case cited by the Defendants. Mike is seeking the contractual, fixed sum of three month's regular salary, which the Company agreed to pay him as severance. This severance payment is owed regardless of subsequent employment. Mike's tax returns and income are not relevant to this dispute, as the amount at issue is fixed by the contract, and there is no duty to mitigate damages for fixed contract amounts. *See In re Uly-Pak, Inc.*, 128 B.R. 763, 769 (Bankr. S.D. Ill. 1991) (noting that there is no duty to mitigate damages for fixed amounts of severance specified in an employment agreement, as the same amount of severance is due even if new employment is obtained immediately thereafter). His personal tax returns have no bearing on the facts in dispute.

Similarly, the Defendants' second set of document requests focused exclusively on Mike's personal securities and stock trading accounts. The Defendants appear to be looking for evidence

that Mike was trading securities during work hours, although no such claim is included in their affirmative defenses. Even if it was, the Defendants should not be permitted to scour Mike's personal and financial records to try to find potential grounds for "cause" in hindsight. If there is information the Defendants were not aware of at the time Mike was let go, that information cannot have been the reason Mike was fired. It is therefore irrelevant to the one issue in dispute.

The cases cited by the Defendants are each distinguishable in a key respect. In *Dufour*, the Plaintiff's income was relevant because he claimed lost income as part of his injury damages. Here, Mike makes no such claim. The amount of his severance is fixed by the contract, irrespective of whether he obtained new employment. In *Giumard*, in addition to being a Federal District Court decision from Florida, the Plaintiff's tax returns were relevant because she claimed lost future income, which implicates a duty to mitigate damages. No such claims are made here, and there is no duty to mitigate damages for fixed severance. *In re Uly-Pak, Inc.*, 128 B.R. 763, 769 (Bankr. S.D. Ill. 1991) (applying Illinois state law). Likewise in *Saket*, the Court ordered production of the Plaintiff's tax returns only because it was relevant to the Plaintiff's duty to mitigate damages, which does not apply here.

The Defendants' purported reason for Mike's termination continues to shift. Their first position was that Mike was fired for taking too much vacation time, despite their unlimited PTO policy. Next, they alleged that Mike was fired for using inappropriate language. Now, after scouring Mike's email account a year later in litigation, the Defendants suggest that Mike may have been competing against Mickey with a company in Sweden (he was not). Most recently, they seem to suggest that Mike was let go for reasons related to his stock market activities.

It is apparent that the Defendants are fishing for reasons to justify Mike's termination after

11

the fact to avoid paying his contractual severance. But, the only relevant issue is why the Company decided to let Mike go in 2023. This information is already, and exclusively, in the Defendants' possession, not Mike's. Only they know what motivated their decision. And having kept no records or communications regarding their reasons, the Defendants will have to explain their rationale through live testimony on the stand at trial. They should not be permitted to scour through Mike's personal and financial affairs a year after the fact in search of reasons to justify their actions in retrospect.

IV.   **Communications in Wisnefski's possession regarding his employment with Mickey**

   A.   **The discovery request and response at issue**

Defendants' discovery request concerning this issue and Plaintiff's response are as follows:

**Request for Production # 21**

All electronic communications (including, but not limited to text messages and personal emails) between Wisnefski and any other person or persons from April 1, 2022, to present that include one or more of the following terms:

- Mickey
- Alex
- Rabens
- severance
- fired
- fire
- termination
- terminate
- employment contract
- employment agreement
- offer letter
- commission

>**RESPONSE:** Plaintiff objects to this request on the grounds that it is overbroad, unduly burdensome, disproportionate to the needs of the case based upon the size of this action, and irrelevant. Defendants' request does not limit the required production to documents regarding Plaintiff's employment with or termination from Mickey Group. Defendants' request would require Plaintiff to produce numerous documents that contain one or more of the requested search terms, even where those documents have no connection of any kind to this lawsuit.
>
>Responsive documents will be produced to the extent that they contain one of the search terms requested above and one of the following additional terms: (1) Mickey; (2) Alex; or (3) Rabens. All other documents will be withheld from production on the basis of the objections stated above.

(Ex. 6 at 2; Ex. 8 at 2.)

### B. Defendants' position

Plaintiff objects to 9 of the 12 terms included in this request seeking communications between him and other individuals regarding the events of this lawsuit. (Ex. 8 at 2.) The terms at issue relate to either the termination of Plaintiff's employment ("fired," "fire," "termination," and "terminate"), the contract that serves as the basis for his three claims in this lawsuit ("employment contract," "employment agreement," and "offer letter"), or the types of compensation he claims he is owed ("severance" and "commission"). Each of these topics is highly relevant to Plaintiff's claims in this lawsuit and Defendants' defenses. (*See generally* Am. Compl.)

Many topics relevant to this lawsuit and documents responsive to this request would not contain the terms "Mickey," "Alex," or "Rabens"—for example, Plaintiff's activities working for another company (or seeking to do so, as with the Swedish example above) or trading securities on his personal accounts during his employment with Mickey. And Plaintiff could easily have communicated regarding topics relevant to this lawsuit without specifically naming Defendants. For example, Plaintiff could have sent an email saying: "I was fired today and I will be getting a large

13

severance payment because they will not be able to prove I violated the employment agreement." This email would clearly be relevant to the case, and Defendants have a right to this information. Additionally, these 12 terms are carefully tailored to apply to this specific case; it is difficult to imagine that Plaintiff has numerous documents discussing termination, commissions, and severance that do not relate to this case.

Plaintiff objects to these terms but fails to meet his burden to show with specificity that the information sought is overly broad, unduly burdensome, or irrelevant. *Young v. City of Chicago*, No. 13 C 5651, 2017 WL 25170, at *9 (N.D. Ill. Jan. 3, 2017). Despite repeated requests, Plaintiff has not specified how many documents are responsive to these search terms and fall within the timeframe posed by the request. (*See* Ex. 9 at 1–4.) As defense counsel noted in an email to Plaintiff's counsel: "It is difficult for us to evaluate any overbreadth argument you may have re these search terms without numbers." (*Id.* at 1.) Plaintiff's "refusal to lay any empirical foundation for its contention of undue burden . . . is evidence that its objections to the discovery demands are indeed spurious." *Heraeus Kulzer, GmbH v. Biomet, Inc.,* 633 F.3d 591, 598 (7th Cir. 2011). Because Plaintiff is in possession of relevant information, and Plaintiff has not provided adequate details as to the "numerous documents" that Plaintiff is reviewing, Plaintiff should be required to comply with Request for Production #21.[4]

---

[4] On April 26, 2024, Plaintiff produced documents responsive to Request for Production #21 containing one of the twelve keywords requested and also the word "Mickey," "Alex," or "Rabens". The production totals 46 pages beyond the volume previously produced. (**Ex. 12**.) This small number provides further evidence that Plaintiff cannot show the other search terms impose an undue burden.

14

For these reasons, Defendants request that the Court order Plaintiff to produce the requested discovery and award Defendants' reasonable expenses and fees under Fed. R. Civ. P. 37(a)(5)(A).

### C. Plaintiff's position

The Defendants' third set of document requests sought any documents containing one of twelve keywords, regardless of any connection to the Company or this lawsuit. Mike objected to producing personal documents that contained a keyword but had nothing to do with this dispute. When the parties were unable to reach a compromise, Mike produced all documents that contained one of the twelve requested keywords and also the word "Mickey," "Alex," or "Rabens" in an effort to limit the production to relevant documents. This was unsatisfactory to the Defendants.

Mike has produced all documents and communications related to his termination and severance. Mike maintains that personal documents that happen to contain one of twelve keywords but have no connection of any kind whatsoever to Mickey Group or this lawsuit are irrelevant and not discoverable.

## V. Conclusion

For the reasons discussed above, the Parties request that the Court issue a ruling to resolve these discovery disputes.

Date: May 21, 2024

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| MICHAEL WISNEFSKI | MICKEY GROUP INC. and ALEX RABENS |
| /s/ *Andrew J. Cunniff* | /s/ *Benjamin S. Morrell* |
| John D. Galarnyk, Esq.<br>Andrew J. Cunniff, Esq.<br>John A. Romanucci, Esq.<br>GALARNYK & ASSOCIATES, LTD.<br>55 West Monroe Street, Ste. 3600<br>Chicago, Illinois 60603<br>john@galarnykltd.com<br>andrew@galarnykltd.com<br>johnr@galarnykltd.com | Benjamin S. Morrell<br>Elizabeth C. Wellhausen<br>TAFT STETTINIUS & HOLLISTER LLP<br>111 E. Wacker Drive, Suite 2600<br>Chicago, IL 60601<br>(312) 527-4000<br>bmorrell@taftlaw.com<br>ewellhausen@taftlaw.com |
| Attorneys for Plaintiff | *Counsel for Defendants* |

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below, I filed the foregoing document with the Clerk of the Court using the Court's CM/ECF filing system, which will send notice of such filing to all counsel of record.

Date: May 21, 2024

*/s/ Benjamin S. Morrell*
Counsel for Defendants
