# EXHIBIT 10

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL WISNEFSKI,<br><br>   Plaintiff,<br><br>v.<br><br>MICKEY GROUP INC. and ALEX RABENS,<br><br>   Defendants. | Case No. 1:23-cv-04984<br><br>District Judge Ellis<br><br>Magistrate Judge Kim |

**DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST SETS OF
WRITTEN DISCOVERY REQUESTS**

  Defendants Mickey Group Inc. and Alex Rabens, by and through undersigned counsel, submit these responses and objections to Plaintiff's first sets of requests for admission, interrogatories, and requests for production of documents.

1

that Wisnefski had ceased doing work for Mickey and that he was exclusively working on personal business (i.e., trading on his personal accounts) while physically present in the office. In fact, two Mickey employees reported that Wisnefski had stated that he was "looking forward to getting fired and receiving severance." When Rabens called Wisnefski to discuss these reports, Wisnefski confirmed that he had not been working on Mickey matters, reiterated his refusal to do sales for Mickey, and repeated his previous insult that Rabens was the "stupidest fucking person I've ever met." Rabens reprimanded Wisnefski during that phone call.

On November 24, 2022, Rabens received new reports from Mickey employees in Chicago that Wisnefski was not doing his work. Rabens called Wisnefski and learned that Wisnefski was out of town and had taken an unapproved vacation of over a week and half. Mickey's employee handbook explains that vacations must be approved ahead of time by the employee's supervisor. Rabens was Wisnefski's direct supervisor, and Wisnefski had not sought or received approval for this vacation. Rabens informed Wisnefski that he needed to seek and receive approval from Rabens before taking any additional vacation in the future, and that if he took additional vacation without seeking and receiving approval, Mickey would consider it job abandonment.

On March 31, 2023, Defendants became aware that Wisnefski was on another unapproved (and extended) vacation. Thus, Wisnefski abandoned his job. Rabens confirmed this to Wisnefski by phone at that time.

3.     Identify by date and detailed description each specific incident where Michael was "insubordinate" towards his superiors as alleged in your Affirmative Defense Paragraph 2.

**Response**: Subject to and without waiving their general objections, Defendants state that on August 24, 2022, days after starting his employment with Mickey, Wisnefski told Rabens that he was unwilling to do any sales because that responsibility was "below" him. Rabens replied that the primary duty of Wisnefski's position was sales and that if he refused to do that work, he would be fired.

9

On November 4, 2023, Wisnefski learned from Mickey employees in Chicago that Wisnefski was frequently not coming in to the office, and that when he did so, he often worked on personal business—including trading lumber futures and other commodities on his personal accounts—rather than perform his job duties for Mickey. Rabens immediately called Wisnefski by phone to discuss these reports. During this call, Wisnefski told Rabens to "fuck off" and stated that Rabens was the "stupidest fucking person I've ever met." In response, Rabens asked Wisnefski if he wanted to continue working at Mickey. Wisnefski yelled "no!" and hung up.

Wisnefski emailed Rabens later that day stating, "I do not want to quit working for Mickey Group," but also restating his previous assertion that he was unwilling to do sales. Rabens replied: "Your Title is President, the Role and Responsibilities is to generate revenue. I want to see you succeed at this place and have a successful tenure but if you refuse to to [sic] the job and/or if you continue to cuss me out, call me names, and say inappropriate things to me or any of the staff, we'll have to part ways." Defendants will produce these emails within a reasonable time after serving these responses.

In another instance, Nate Cohen (software engineer for Mickey) had a meeting with Wisnefski to discuss work issues. However, instead of discussing work-related matters, Wisnefski spent two hours showing Cohen video clips of basketball games.

On January 18, 2023, Rabens received new reports from Mickey employees in Chicago that Wisnefski had ceased doing work for Mickey and that he was exclusively working on personal business (i.e., trading on his personal accounts) while physically present in the office. In fact, two Mickey employees reported that Wisnefski had stated that he was "looking forward to getting fired and receiving severance." When Rabens called Wisnefski to discuss these reports, Wisnefski confirmed that he had not been working on Mickey matters, reiterated his refusal to do sales for Mickey, and repeated his previous insult that Rabens was the "stupidest fucking person I've ever met." Rabens reprimanded Wisnefski during that phone call.

On November 24, 2022, Rabens received more reports from Mickey employees in Chicago that Wisnefski was not doing his work. Rabens called Wisnefski and learned that Wisnefski

was out of town and had taken an unapproved vacation of over a week and half. Mickey's employee handbook explains that vacations must be approved ahead of time by the employee's supervisor. Rabens was Wisnefski's direct supervisor, and Wisnefski had not sought or received approval for this vacation. Rabens informed Wisnefski that he needed to seek and receive approval from Rabens before taking any additional vacation in the future, and that if he took additional vacation without seeking and receiving approval, Mickey would consider it job abandonment.

On March 31, 2023, Defendants became aware that Wisnefski was on another unapproved (and extended) vacation. Thus, Wisnefski abandoned his job.

4. Identify by date and detailed description each specific incident where Michael "abandoned his job" as alleged in your Affirmative Defense Paragraph 2.

**Response**: Subject to and without waiving their general objections, see Defendants' answer to Interrogatory 1.

5. Identify by date and detailed description each specific instance(s) where Michael failed to perform duties assigned to him by Michael's Chief Technology Officer or Controller, if any.

**Response**: Defendants object to this interrogatory to the extent it seeks information regarding every single communication from or task assigned by Mickey's Chief Technology Officer or Controller to Plaintiff, as this is overbroad, unduly burdensome, disproportionate to the needs of the case, and not relevant to any party's claim or defense.

Subject to and without waiving their general objections, Defendants state that Wisnefski was not assigned duties by the Chief Technology Officer or Controller beyond occasional requests for information.

6. Identify by date and detailed description any other incidents that you allege resulted in Michael being terminated "for cause," as alleged.

**Response**: Subject to and without waiving their general or specific objections, Defendants